**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DENNIS A. BUSCHLE,**

              **Plaintiff,**                **5:10-cv-1535**
                                                      **(GLS)**

        **v.**

**MICHAEL J. ASTRUE,** Commissioner of
Social Security,

              **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                       HOWARD D. OLINSKY, ESQ.
300 S. State Street                     JAYA A. SHURTLIFF, ESQ.
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN               SUZANNE M. HAYNES
United States Attorney                  Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Dennis A. Buschle challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Buschle's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On September 28, 2007, Buschle, a former welder afflicted with seizure disorder, bipolar II disorder, alcohol and cocaine abuse in recent remission, and status post aortic valve replacement, filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since October 15, 2006.  (*See* Tr.[1] at 16, 40, 137-144.)  After his application was denied, (*see id.* at 64-69), Buschle requested a hearing before an Administrative Law Judge (ALJ), which was held on February 8, 2010.[2]  (*See id.* at 35-61, 72)  On February 25, 2010, the ALJ issued a

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 8.)

[2] After a brief initial hearing on November 9, 2009, Buschle returned for a full hearing on February 8, 2010 wherein the ALJ heard his testimony.  (*See* Tr. at 30-34, 35-61.)

2

decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-4, 11-27.)

Buschle commenced the present action by filing a complaint on December 20, 2010, seeking review of the Commissioner's determination. (Compl., Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 13.)

### III. Contentions

Buschle contends that the Commissioner's decision is tainted by the application of improper legal standards and not supported by substantial evidence. (*See* Dkt. No.12 at 12-25.) Specifically, Buschle claims that the ALJ: (1) did not apply the proper standards for evaluating Buschle's Residual Function Capacity (RFC); (2) failed to apply the "[p]sychiatric [r]eview [t]echnique" (PRT) in determining Buschle's mental functional limitations; (3) improperly assessed Buschle's credibility; and (4) did not meet his step 5 burden by failing to consult with a vocational expert in light of Buschle's "significant non-exertional limitations." (*Id.*) The Commissioner counters that the appropriate legal standards were used and

3

substantial evidence supports the ALJ's decision.  (*See* Dkt. No. 13 at 13-25.)

## IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See* Dkt. No. 12 at 2-12; Dkt. No. 13 at 1-13.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

Buschle initially contends that the ALJ improperly determined his RFC.  (*See* Dkt. No. 12 at 14-19.)  First among the errors alleged is that the ALJ found Buschle "capable of 'light work' without engaging in a function-by[-]function assessment."  (Dkt. No. 12 at 15-16.)  Thus, Buschle takes

4

exception with the ALJ's failure to fully explain his assessment of Buschle's ability to sit, stand, walk, lift, carry, push and pull. (*See id.*) The court is not persuaded by this argument.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ considered the relevant factors in reaching a RFC determination. First, he specifically acknowledged the appropriate definitions—20 C.F.R. §§ 404.1567(b) and 416.967(b)[4]—for "light work,"

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

(Tr. at 19.), which required him to address Buschle's "ability to sit, stand, walk, lift, carry, push and pull." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 436 (N.D.N.Y. 2008).  Although he could have been more explicit, the ALJ recounted, with respect to Buschle's exertional capabilities, that he "testified that he could occasionally lift 40 to 50 pounds, sit one-and-a-half hours, stand one-and-a-half hours at a time, and walk two hours."  (Tr. at 19.)  The ALJ also noted that, as reported by physician Berton Shayevitz, Buschle does his own cooking, cleaning, laundry, and shopping, and also showers and dresses himself—all of which speak to his capacity to meet the exertional limitation of light work.  (*See id.* at 17, 284.)  Similarly, the ALJ acknowledged—and accorded "[s]ignificant weight" to—the opinion of Buschle's treating physician, Roy Smith, who specifically assessed Buschle's functional limitation and found "[n]o evidence of limitation" in any of the relevant categories.  (*Id.* at 21.)  Further, Dr. Smith found that Buschle was able to walk, stand, sit, push, pull, bend, lift and carry "for more than 4 hours/day." (*Id.*)  Notwithstanding any shortcomings of the ALJ's function-by-function analysis, in light of the evidence regarding Buschle's ability to sufficiently sit, stand, walk, lift, carry, push and pull, the record amply supports his RFC determination.

6

Next, Buschle argues that the ALJ committed error by affording evidentiary weight to the State agency disability analyst's opinion regarding Buschle's ability to perform light work and by failing to develop the record with respect to exertional limitations.  (*See* Dkt. No 12 at 16-17.)  The Commissioner claims that, even if it was error for the ALJ to attribute any weight to the State agency disability analyst's opinion, it was harmless because it did not result in prejudice to Buschle.  (*See* Dkt. No. 13 at 21-22.)  The court agrees that if there was an error, it was harmless.

The opinions of a disability analyst regarding a claimant's RFC "are not entitled to any medical weight."  *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 348 n.10 (E.D.N.Y. 2010).  Such an opinion may be used, however, as an "other source" evaluation, *Nelson v. Barnhart*, No. 05-CV-0581, 2008 WL 656676, at *8 (N.D.N.Y. Mar. 5, 2008), "[i]n addition to evidence from the acceptable medical sources . . . to show the severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1513(d), 416.913(d)).  Where an ALJ errs by improperly relying on such an opinion, yet other competent medical evidence regarding the claimant's RFC is present in the record, the error does not require remand.  *See Arteaga v. Astrue*, No. 06 Civ. 1244, 2007 WL 2402871, at *17 (S.D.N.Y. Aug. 15, 2007); *see also*

7

*Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (explaining that remand for an error is unnecessary where reconsideration, in light of the proper legal standards, would lead to the same conclusion previously reached).

Here, because the ALJ's determination was supported by substantial evidence, as noted above, notwithstanding any reliance upon the disability analyst's RFC assessment, whether he erred by giving "[s]ome weight" to that opinion is of no moment. (Tr. at 21.)

Lastly, as to the RFC determination, Buschle asserts that the ALJ "failed to meet his duty to develop the record in regard to treating source opinions of exertional limitations." (Dkt. No. 12 at 17-19.) Specifically, Buschle contends that the record is devoid of a function-by-function analysis from a treating or examining source that took into account his seizure disorder and cardiovascular ailments. (*See id.* at 17-18.) Moreover, Buschle claims that, given the "treating physician rule," the ALJ was obligated "to obtain an opinion from a treating source" or, at least, make a reasonable attempt to obtain one. (*Id.* at 18-19.) Simply put, this argument is without merit. As stated above, the ALJ cited evidence that sufficiently supports his RFC determination. (*See* Tr. at 18-21.)

**B.    Psychiatric Review Technique**

8

Buschle next contends that, in light of his significant psychiatric limitations, "[t]he ALJ failed to apply the [PRT] in determining [his] mental functional limitations." (Dkt. No. 12 at 19-21.)  Particularly, Buschle claims that the ALJ "did not engage in the required analysis" and failed to include a PRT form (PRTF) in the record. (*Id.* at 21.)  Buschle's claim is meritless.

At one time, an ALJ was required to "complete a PRTF and attach it to his decision"; however, "the regulations no longer require the ALJ to complete that standard form." *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008).  Instead, the ALJ's determination must reflect his application of the "special technique" set out in 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* As relevant here, the ALJ is required to make a specific finding as to the claimant's functional limitation with respect to four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episode of decompensation." 20 C.F.R. §§ 404.1520a(a), (c)(3), (e)(4), 416.920a(a), (c)(3), (e)(4).

Here, the ALJ properly applied and documented the "special technique" in evaluating Buschle's mental impairments. (*See* Tr. at 17-18.) After articulating the correct legal standard, the ALJ found "mild restriction" of Buschle's activities of daily living, "mild difficulties" in social functioning,

9

"moderate difficulties" with regard to concentration, persistence, or pace, and no episodes of decompensation for extended durations. (*Id.*) All of the ALJ's findings are supported by substantial evidence in the record. (*See id.* at 284, 402-03, 409, 411-12.) The ALJ also explained that his RFC assessment, which he was required to complete in light of his finding of severe mental impairment that did not meet or equal a listed impairment, (*see id.* at 16-18); 20 C.F.R. § 404.1520a(d)(3), "reflects the degree of limitation [that he] has found in the . . . mental function analysis." (*Id.* at 18.) Therefore, the ALJ applied the appropriate legal standards.

## C.     Credibility Determination

Next, Buschle argues that "[t]he ALJ failed to apply the appropriate legal standards in assessing [his] credibility, and [the ALJ's] finding is unsupported by substantial evidence."[5] (Dkt. No. 12 at 21-23.) Specifically, he objects to the ALJ's determination "that his statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC finding." (Dkt. No. 12 at 21-23.) This argument also fails.

---

[5] Buschle's contention that the ALJ erred by attempting "to associate [his] seizures with substance abuse," (Dkt. No. 12 at 23), is without merit. The ALJ correctly characterized the evidence and his ultimate finding does not rely on the causation of Buschle's seizure disorder. (*See* Tr. at 18-21.)

10

As noted above, an ALJ must consider a claimant's subjective complaints of pain in gauging his RFC.  *See* 20 C.F.R. § 404.1545(a)(3).  However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A).  The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R.§§ 404.1529(a), 416.929(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 61 Fed. Reg. 34483, 34485-86 (July 2, 1996).  Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as he sets forth his "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ considered the relevant evidence and sufficiently

11

articulated why he, in part, rejected Buschle's testimony as to the limiting effects of his symptoms. (*See* Tr. at 19-21.) As relevant to this issue, Buschle explained during the hearing that he had a poor memory, his physician had restricted him from riding his bike, climbing ladders, or driving cars, and he had difficulty getting along with co-workers and supervisors and missed time during his most recent employment in 2006. (*See id.* at 40-41, 47-48, 54.) While Buschle is correct that the medical evidence is consistent with his testimony regarding restriction from working at heights, (*see id.* at 308), the opinions of his treating psychiatrist, Paula Zebrowski, and the Commissioner's consultant, Dr. Dennis Noia, were somewhat contrary regarding his memory and ability to get along in the work place, (*see id.* at 403, 406-07, 412, 414-15). Even assuming that the medical evidence is wholly consistent with Buschle's testimony as he claims, (*see* Dkt. No. 12 at 23)—and, thus, that the ALJ should have found him credible—the RFC determination is not the product of error inasmuch as it is supported by substantial evidence.

## D.    **Vocational Assessment**

Finally, Buschle contends that the ALJ committed reversible error at step five of the evaluation by making a disability determination based solely

12

on the grid guidelines, *see* 20 C.F.R. pt. 404, subpt. P, app. 2, instead of also consulting with a vocational expert regarding Buschle's nonexertional limitations. (*See* Dkt. No. 12 at 24-25.) Specifically, Buschle asserts that the ALJ's determination that his "non-exertional limitations have 'little or no effect on the occupational base of unskilled light work'" is contrary to the RFC determination. (*Id.*) In the RFC determination, the ALJ found that Buschle is capable of light work, "but is limited to only occasional contact with co-workers, supervisors, and/or the general public; and dealing with occasional changes in a routine work setting" and "should avoid climbing ladders, ropes and scaffolds and avoid exposure to heights, hazards, dangerous machinery, and driving." (Tr. at 18-19). Again, the court disagrees.

The appropriateness of applying "the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). Indeed, the ALJ is vested with discretion regarding whether to use a vocational expert. *See* 20 C.F.R. § 404.1566(e). But "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status

13

because they fail to take into account [the] claimant's nonexertional impairments" and, accordingly, the ALJ should consult with a vocational expert before making a determination as to disability. *Bapp*, 802 F.2d at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).

As pertinent to Buschle's nonexertional limitation regarding the demands of unskilled work:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, 1985 WL 56857, at *4 (1985). And as to Buschle's environmental limitations arising from his seizure disorder, the Commissioner has previously ruled that "few jobs in the national economy require ascending or descending ladders and scaffolding," SSR 83-14, 1983 WL 31254, at *2 (1983), and "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all

14

exertional levels," SSR 85-15, 1985 WL 56857, at *8.

Here, the ALJ determined, and the court agrees, that Buschle's nonexertional impairments will not significantly limit the range of work permitted by his exertional limitations. (*See* Tr. at 22-23.). Despite Buschle's difficulties interacting with supervision and co-workers and potential for problems coping with changes in his work setting, (*see id.* at 41, 406), Dr. Noia opined that Buschle's abilities in this regard were only mildly or—in the case of Buschle's ability to respond appropriately to changes in a routine work setting—moderately impaired, (*see id.* at 415).[6] Moreover, as demonstrated above, height restrictions do not have a significant impact on the jobs available to Buschle. Thus, the ALJ's decision to forego consultation with a vocational expert was also proper.

### E.  Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

---

[6] Notably, "mild" means that there is "a slight limitation" and "moderate" means that there is "more than a slight limitation . . . but the individual is still able to function satisfactorily." (Tr. at 414.)

15

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Buschle's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 10, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court